JS 44 (Rev. 08/16) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained here in neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Lincoln Freight Company, L.L.C.

## DEFENDANTS
New World Van Lines, Inc.

**(b)** County of Residence of First Listed Plaintiff: **Webb**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Cook**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Adolfo Campero, Jr., Campero Tamez, PLLC, 315 Calle Del Norte, Ste. 207, Laredo, TX 78041, (956) 796-0330 - Tel., (956) 796-0399 - Fax

Attorneys *(If Known)*
Vic H. Henry, Henry Oddo Austin & Fletcher, P.C., 1700 Pacific Ave., #2700, Dallas, TX 75201, (214) 658-1900 - Tel.

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS |  | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  |  | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander |  |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability |  |  | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability |  | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** |  | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☒ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise |  |  | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
|  |  |  | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act |  | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** |  | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General |  |  |  |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application |  |  |
|  | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions |  |  |
|  |  | ☐ 550 Civil Rights |  |  |  |
|  |  | ☐ 555 Prison Condition |  |  |  |
|  |  | ☐ 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: **49 USC § 14706**

Brief description of cause: **Cargo Loss**

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ **$229,400.00**

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE: _____ DOCKET NUMBER: _____

DATE: **January 30, 2017**
SIGNATURE OF ATTORNEY OF RECORD: *(signature)*

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| LINCOLN FREIGHT COMPANY, L.L.C. | § § § § | |
| Plaintiff, | § § | |
| | § | C.A. NO. _____ |
| V. | § § § § § | |
| NEW WORLD VAN LINES, INC. | § § | |
| Defendant. | § | |

## **COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff Lincoln Freight Company, L.L.C., and files this Complaint against Defendant New World Van Lines, Inc., and shows as follows:

## I.
## **PARTIES**

1. Plaintiff Lincoln Freight Company, L.L.C. ("Lincoln"), is a limited liability company duly established and existing under the laws of the State of Texas. Lincoln has its principal place of business in Laredo, Texas. Lincoln is the subrogree of certain third parties whose cargo sustained damages while in transit under the custody of Defendant New World Van Lines, Inc.

2. Defendant New World Van Lines, Inc. ("New World") is a corporation established and existing under the laws of the State of Illinois. It has its principal place of business at 5875 N. Rogers Ave., Chicago, Illinois 60646. New World is a motor carrier engaged in the performance of interstate carriage. Upon information and belief, New World has a terminal or office in the

Southern District of Texas and otherwise operates in the State of Texas, including in Laredo, Texas.

## II.
## JURISDICTION/VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337. This action seeks recovery for cargo damages under a bill of lading and 49 U.S.C. § 14706 (the "Carmack Amendment"). Moreover, pursuant to 49 U.S.C. § 14706(d), venue is proper in the Southern District of Texas, Laredo Division, as Defendant New World was the "delivering carrier" of the Cargo at issue and, upon information and belief, operates in the Southern District of Texas, including its Laredo Division. Furthermore, the amount in controversy exceeds the minimum amount required by 28 U.S.C. § 1337.

## III.
## BACKGROUND FACTS

4. On or about March 17, 2016, Defendant New World accepted a load from Set-Freight International, L.L.C., a freight broker. Accordingly, Defendant New World accepted to be the "delivering carrier" for the load, which was to be transported from Laredo, Texas, to Manchester, Tennessee. A bill of lading issued by the US Customs Broker for this load, which originated in Mexico, is attached as Exhibit A.

5. The bill of lading identifies Fugra, S.A. de C.V., Bocar, and Plastic Tec as the shippers. The foregoing companies are all part of a corporate group in Mexico known as "Bocar Group." The consignee is identified in the bill of lading as Auma Engineering Products, Inc., another member of "Bocar Group." There are no notations or exceptions made by Defendant New World on the bill of lading, accordingly, upon Defendant New World's receipt of the cargo it was in apparent good order.

6. The load left Laredo on March 18, 2016. The driver was Syris Williams who was driving for Defendant New World. On March 21, 2016, in Madison County, Tennessee, the cargo sustained fire damage and was completely destroyed.

7. Thereafter, the owner(s) of the cargo made a claim in the amount of $229,399.39 against their cargo insurer. The insurer paid the claim less a deductible of $11,469.97. The net amount paid by the insurer on the claim is $217,929.42. Subsequently, the insurer made a claim against Plaintiff Lincoln. Because of ostensible liability for the cargo damages under a transportation services contract with the Bocar Group, Lincoln provided good and valuable consideration to the insurer and in exchange acquired the insurer's subrogation rights.

8. Pursuant to the Carmack Amendment, and asserting subrogee rights, Plaintiff Lincoln alleges that Defendant New World is liable for the damages to the cargo, including but not limited to its market value in the condition in which it should have arrived at its destination.

## IV.
## CONDITIONS PRECEDENT

9. Plaintiff Lincoln and/or its predecessor-in-interest provided proper written notice of its claim to Defendant New World. Such claim has been denied. As a result, Plaintiff Lincoln has satisfied any and all conditions precedent to bringing this suit.

## V.
## PRAYER

10. Plaintiff Lincoln prays for a judgment to be awarded in its favor and against Defendant New World for all damages available under applicable law, including pre-judgment interest, post-judgment interest, and court costs.

Respectfully submitted,

CAMPERO TAMEZ, P.L.L.C.

_/s/Adolfo Campero, Jr._
ADOLFO CAMPERO, JR.
Texas State Bar No. 00793454
S.D. TX I.D. # 19385
315 Calle Del Norte, Ste. 207
Laredo, Texas 78041
(956) 796-0330 (Tel)
(956) 796-0399 (Fax)
acampero@camperolaw.com

ATTORNEY-IN-CHARGE FOR PLAINTIFF
LINCOLN FREIGHT COMPANY, L.L.C.

# EXHIBIT 1

**M. J. Carrillo Co., Inc.  (AS US BROKER ONLY)**
6101 Riverside Drive
Laredo, TX  78041

**Straight Bill of Lading**

Shipper's No: _____

SET FREIGHT
_____
Name of Carrier

B/L No:             0535839
Entry No:           0535839-6

Received subject to the classfications and tariffs in effect on the date of issue of this bill of lading

LAREDO, TX                  At 03/17/16   From   FUGRA SA DE CV / BOCAR / PLASTIC TEC

The property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked and destined as indicated below, which said carrier (The word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its own route, otherwise to deliver to another carrier on the route of said destination. It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any said pro, that every service to be performed hereunder shall be subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth (1) in Order Southern, Western and Illinois Freight Classification in effect on the date thereof, if this is a rail or rail-water shipment, or (2) in the applicable motor carrier classification or tariff if this is a motor carrier shipment.

Shipper hereby certifies that he is familiar with all the terms and conditions of the said Bill of Lading, including those on the back thereof, set forth in the classification of tariff which governs the transportation of this shipment, and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assignees.

Consigned to:  AUMA ENGINEERING PRODUCTS INC
               161 VOLUNTEER PARKWAY
               MANCHESTER, TN 37355

Route:                                                      Order No:

Delivering Carrier:   SET FREIGHT                 Trailer Initial:     Trailer No: SET-114

| Number Packages | HM | Kind of Package, Description of Articles Special Marks and Exceptions | Weight (Subj. to Corr.) | |
|---|---|---|---|---|
| 18 PLTS | | AUTO ENGINE PARTS<br><br>INV# 84021038 FUG001719-L2016     ce# 0535839-6 | 9,652 Lb | Subject to section 7 of conditions of applicable bill of lading, if this shipment to be delivered to the consignor shall sign the following statement:<br>The carrier shall not make delivery of this shipment without payment of the freight and all other lawful charges.<br><br>_Zulema Aguilar_<br>(Signature of Consignor) |
| 70 PLTS | | AUTO ENGINE PARTS<br><br>BOCAR INV# 84021040 FU002480-L2016   CE# 0535838-8 | 11098 KGS | |
| | | | | If the charges are to be paid write or stamp here "To be prepaid"<br><br>**\*\*\* Prepaid \*\*\*** |
| | | | | Received $ _____<br>to apply as prepayment for the charges for the property described hereon<br><br>(Agent or Cashier) |
| | | | | Per _____<br>(The signature here acknowledges only the amount prepaid |
| | | | | Charges Advanced: |
| | | | | Shipper's imprint in lieu of stamp, not a part of the Bill of Lading approved by the Interstate Commerce Commission. |
| | | SEAL: 15271/23403/23406 | | |

\* If the shipment moves between two ports by a waterborne carrier, the law requires that the bill of lading state whether it is the carrier's or shipper's weight.
NOTE - Where the rate is dependent on the value, shippers are required to state specifically in writing the agreed or declared value of the property.
The agreed declared value of the property is hereby specified by the shipper not to exceed
per
The fiber boxes used for this shipment conform to the specifications set forth on the box maker's certificate thereon, and all other requirements of the consolidated Freight classification.

SET Freight                    Shipper Per   _Zulema Aguilar_

Date  03/17/16

# TERMS AND CONDITIONS OF SERVICE

These terms and conditions of service constitute a legally binding contract between the "Company" and the "Customer". In the event the Company renders services and issues a document containing Terms and Conditions governing such services, the Terms and Conditions set forth in such other document(s) shall govern those services.

1. **Definitions.**
   (a) "Company" shall mean M. J. Carrillo Co., Inc., its subsidiaries, related companies, agents and/or representatives;
   (b) "Customer" shall mean the person for which the Company is rendering service, as well as its principals agents and/or representatives, including, but not limited to, shippers, importers, exporters, carriers, secured parties, warehousemen, buyers and/or sellers, shipper's agents, insurers and underwriters, break-bulk agents, consignees, etc. **It is the responsibility of the Customer to provide notice and copy(s) of these terms and conditions of service to all such agents or representatives;**
   (c) "Documentation" shall mean all information received directly or indirectly from Customer, whether in paper or electronic form.
   (d) "Ocean Transportation Intermediaries" ("OTI") shall include an "ocean freight forwarder" and a "non-vessel operating carrier";
   (e) "Third parties" shall include, but not be limited to, the following: "carriers, truckmen, cartmen, lightermen, forwarders, OITs, customs brokers, agents, warehousemen and others to which the goods are entrusted for transportation, cartage, handling and/or delivery and/or storage or otherwise".

2. **Company as agent.**
   The Company acts as the "agent" of the customer for the purpose of performing duties in connection with the entry and release of goods, post entry services, the securing of export licenses, the filing of export and security documentation on behalf of the Customer and other dealings with Government Agencies: as to all other services, Company acts as an independent contractor.

3. **Limitation of Actions.**
   (a) Unless subject to a specific statute or international convention, all claims against the Company for a potential or actual loss, must be made in writing and received by the Company, within ninety (90) days of the event giving rise to the claim; the failure to give the Company timely notice shall be a complete defense to any suit or action commenced by Customer.
   (b) All suits against Company must be filed and properly served on Company as follows:
      (i) For claims arising out of ocean transportation, within one (1) year from the date of the loss;
      (ii) For claims arising out of air transportation, within two (2) years from the date of the loss;
      (iii) For claims arising out of the preparation and/or submission of an import entry(s), within sixty (60) days from the date of liquidation of the entry(s);
      (iv) For any and all other claims of any other type, within one (1) year from the date of the loss or damage.

4. **No Liability For the Selection of Services of Third Parties and/or Routes.**
   Unless services are performed by persons or firms engaged pursuant to express written instructions from the Customer, Company shall use reasonable care in its selection of third parties, or in selecting the means, route and procedure to be followed in the handling, transportation, clearance and delivery of the shipment; advice by the Company that a particular person or firm has been selected to render services with respect to the goods, shall not be construed to mean that the Company warrants or represents that such person or firm will render such services nor does Company assume responsibility or liability for an action(s) and/or inaction(s) of such third parties and/or its agents, and shall not be liable for any delay or loss of any kind, which occurs while a shipment is in the custody or control of a third party or the agent of a third party; all claims in connection with the Act of a third party shall be brought solely against such party and/or its agents; in connection with any such claim, the Company shall reasonably cooperate with the Customer, which shall be liable for any charges or costs incurred by the Company.

5. **Quotations Not Binding.**
   Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by the Company to the Customer are for informational purposes only and are subject to change without notice; no quotation shall be binding upon the Company unless the Company in writing agrees to undertake the handling or transportation of the shipment at a specific rate or amount set forth in the quotation and payment arrangements are agreed to between the Company and the Customer.

6. **Reliance on Information Furnished.**
   (a) Customer acknowledges that it is required to review all documents and declarations prepared and/or filed with the Customs Service, other Government Agency and/or third parties, and will immediately advise the Company of any errors, discrepancies, incorrect statements, or omissions on any declaration filed on Customers behalf;
   (b) In preparing and submitting customs entries, export declarations, applications, documentation and/or export data to the United States and/or a third party, the Company relies on the correctness of all documentation, whether in written or electronic format, and all information furnished by Customer; Customer shall use reasonable care to insure the correctness of all such information and shall indemnify and hold the Company harmless from any and all claims asserted and/or liability or losses suffered by reason of the Customer's failure to disclose information or any incorrect or false statement by the Customer upon which the Company reasonably relied. The Customer agrees that the Customer has an affirmative non-delegable duty to disclose any and all information required to import, export or enter the goods.

7. **Declaring Higher Values to Third Parties.**
   Third parties to whom the goods are entrusted may limit liability for loss or damage; the Company will request excess valuation coverage only upon specific written instructions from the Customer, which must agree to pay any charges therefore; in the absence of written instructions or the refusal of the third party to agree to a higher declared value, at Company's discretion, the goods may be tendered to the third party, subject to the terms of the third party's limitations of liability and/or terms and conditions of service.

8. **Insurance.**
   Unless requested to do so in writing and confirmed to Customer in writing, Company is under no obligation to procure insurance on Customer's behalf; in all cases, Customer shall pay all premiums and costs in connection with procuring requested insurance.

9. **Disclaimers; Limitation of Liability.**
   (a) Except as specifically set forth herein, Company makes no express or implied warranties in connection with its services;
   (b) In connection with all services performed by the Company, Customer may obtain additional liability coverage, up to the actual or declared value of the shipment or transaction, by requesting such coverage and agreeing to make payment therefore, which request must be confirmed in writing by the Company prior to rendering services for the covered transaction(s).
   (c) In the absence of additional coverage under (b) above, the Company's liability shall be limited to the following:
      (i) where the claim arises from activities other than those relating to customs brokerage, $50.00 per shipment or transaction, or
      (ii) where the claim arises from activities relating to "Customs Business," $50.00 per entry or the amount of brokerage fees paid to Company for the entry, whichever is less;

10. **Advancing money.**
    All charges must be paid by Customer in advance unless the Company agrees in writing to extend credit to customer; the granting of credit to a Customer in connection with a particular transaction shall not be considered a waiver of this provision by the Company.

11. **Indemnification/Hold Harmless.**
    The Customer agrees to indemnify, defend, and hold the Company harmless from any claims and/or liability, fines, penalties, and/or attorney's fees arising from the importation or exportation of customers merchandise and/or any conduct of the Customer, including but not limited to the inaccuracy of entry, export or security data supplied by Customer or its agent or representative, which violates and Federal, State and/or other laws, and further agrees to indemnify and hold the Company harmless against any and all liability, loss, damages, costs, claims, penalties, fines and/or expenses, including but not limited to reasonable attorney's fees, which the Company may hereafter incur, suffer or be required to pay by reason of such claims; in the event that any claim, suit or proceeding is brought against the Company, it shall give notice in writing to the Customer by mail at its address on file with the Company.

12. **C.O.D. or Cash Collect Shipments.**
    Company shall use reasonable care regarding written instructions relating to "Cash/Collect" on "Deliver (C.O.D.)" shipments, bank drafts, cashier's and/or certified checks, letter(s) of credit and other similar payment documents and/or instructions regarding collection of monies but shall not have liability if the bank or consignee refuses to pay for the shipment.

13. **Costs of Collection.**
    In any dispute involving monies owed to Company, the Company shall be entitled to all costs of collection, including reasonable attorney's fees and interest at 6% per annum or the highest rate allowed by law, whichever is less, unless a lower amount is agreed to by Company.

14. **General Lien and Right to Sell Customer's Property.**
    (a) Company shall have a general and continuing lien on any and all property of Customer coming into Company's actual or constructive possession or control for monies owed to Company with regard to the shipment on which the lien is claimed, a prior shipment(s) and/or both;
    (b) Company shall provide written notice to Customer of its intent to exercise such lien, the exact amount of monies due and owing, as well as any on-going storage or other charges; Customs shall notify all parties having an interest in its shipment(s) of Company's rights and/or the exercise of such lien.
    (c) Unless, within thirty days of receiving notice of lien, Customer posts cash or letter of credit at sight, or, if the amount due is in dispute, an acceptable bond equal to 110% of the value of the total amount due, in favor of Company, guaranteeing payment of the monies owed, plus all storage charges accrued or to be accrued, Company shall have the right to sell such shipment(s) at public or private sale or auction and any net proceeds remaining thereafter shall be refunded to Customer.

15. **No Duty To Maintain Records For Customer.**
    Customer acknowledges that pursuant to Sections 508 and 509 of the Tariff Act, as amended (19 U.S.C. §1508 and 1509), it has the duty and is solely liable for maintaining all records required under the Customs and/or other Laws and Regulations of the United States; unless otherwise agreed to in writing, the Company shall only keep such records that it is required to maintain by Statute(s) and/or Regulation(s), but not act as a "recordkeeper" or "recordkeeping agent" for Customer.

16. **Obtaining Binding Rulings, Filing Protests, etc.**
    Unless requested by Customer in writing and agreed to by Company in writing, Company shall be under no obligation to undertake any pre- or post Customs release action, including, but not limited to, obtaining binding rulings, advising of liquidations, filing of petition(s) and/or protests, etc.

17. **Preparation and Issuance of Bills of Lading.**
    Where Company prepares and/or issues a bill of lading, Company shall be under no obligation to specify thereon the number of pieces, packages and/or cartons, etc.; unless specifically requested to do so in writing by Customer or its agent and Customer agrees to pay for same, Company shall rely upon and use the cargo weight supplied by Customer.

18. **No Modification or Amendment Unless Written.**
    These terms and conditions of service may only be modified, altered or amended in writing signed by both Customer and Company; any attempt to unilaterally modify, alter or amend same shall be null and void.

19. **Compensation of Company.**
    The compensation of the Company for its services shall be included with and is in addition to the rates and charges of all carriers and other agencies selected by the Company to transport and deal with the goods and such compensation shall be exclusive of any brokerage, commissions, dividends, or other revenue received by the Company from carriers, insurers and others in connection with the shipment. On ocean ports, upon request, the Company shall provide a detailed breakout of the components of all charges assessed and a true copy of each pertinent document relating to these charges. In any referral for collection or action against the Customer for monies due the Company, upon recovery by the Company, the Customer shall pay the expense of collection and/or litigation, including a reasonable attorney fee.

20. **Force Majeure.**
    Company shall not be liable for losses, damages, delays, wrongful or missed deliveries or nonperformance, in whole or in part, of its responsibilities under the Agreement, resulting from circumstances beyond the control of either Company or its sub-contractors, including but not limited to: (i) acts of God, including flood, earthquake, storm, hurricane, power failure or other natural disaster; (ii) war, hijacking, robbery, theft or terrorist activities; (iii) incidents or deteriorations to means of transportation, (iv) embargoes, (v) civil commotions or riots, (vi) defects, nature or inherent vice of the goods; (vii) acts, breaches of contract or omissions by Customer, Shipper, Consignee or anyone else who may have an interest in the shipment, (viii) acts by any government or any agency or subdivision thereof, including denial or cancellation of any import/export or other necessary license; or (ix) strikes, lockouts or other labor conflicts.

21. **Severability.**
    In the event any Paragraph(s) and/or portion(s) hereof is found to be invalid and/or unenforceable, then in such event the remainder hereof shall remain in Full force and effect. Company's decision to waive any provision herein, either by conduct or otherwise, shall not be deemed to be a further or continuing waiver of such provision or to otherwise waive or invalidate any other provision herein.

22. **Governing Law; Consent to Jurisdiction and Venue.**
    These terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of Texas without giving consideration to principals of conflict of law. Customer and Company
    (a) Irrevocably consent to the jurisdiction of the United States District Court and the State courts of Texas
    (b) agree that any action relating to the services performed by Company, shall only be brought in said courts;
    (c) consent to the exercise of in personam jurisdiction by said courts over it, and
    (d) further agree that any action to enforce a judgment may be instituted in any jurisdiction.

Approved by the National Customs Broker & Forwarders Association of America, Inc. (Revised 11/12)